UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD EVANS**<br><br>    Plaintiff,<br><br>v.<br><br>**ONE WORLD TECHNOLOGIES, INC., TECHTRONIC INDUSTRIES NORTH AMERICA, INC., RIDGID, INC., THE RIDGE TOOL COMPANY, AND HOME DEPOT U.S.A., INC.**<br><br>    Defendants. | CIVIL ACTION NO.:   2:22-cv-00188<br><br>SECTION:<br><br>JUDGE:<br><br>MAGISTRATE: |

## COMPLAINT FOR DAMAGES

This Complaint of Ronald Evans respectfully represents as follows:

### PARTIES

1.     The plaintiff is Ronald Evans ("Mr. Evans"), who is a person of full age of majority and resident of Jefferson Parish, Louisiana. Evans was injured on March 15, 2021, while using a Ridgid table saw that he purchased in Louisiana.

2.     Defendant **ONE WORLD TECHNOLOGIES, INC.** ("One World Technologies") a/k/a **TTI Consumer Power Tools, Inc.**, is a Delaware corporation with its principal place of business located at 1428 Pearman Dairy Road, Anderson, South Carolina 29625. One World Technologies manufactures a variety of power tools, including table saws. The product manual provided with plaintiff's table saw indicates it was manufactured by One World Technologies. Upon information and belief, One World Technologies is also involved with the design, marketing, testing, advertising, promotion, sale, and distribution of Ridgid-brand

1

table saws, including the one purchased and used by the plaintiff.

3. At all relevant times, One World Technologies has transacted and conducted business within the State of Louisiana and has derived significant revenue from interstate commerce. One World Technologies expected or should have expected that its actions would have consequences within the State of Louisiana.

4. Defendant **TECHTRONIC INDUSTRIES NORTH AMERICA, INC.** ("TTI-NA") is a Delaware corporation with its principal place of business located at 1428 Pearman Dairy Road, Anderson, South Carolina 29625. One World Technologies is a subsidiary of TTI-NA.

5. Upon information and belief, TTI-NA exercises dominion and control over One World Technologies and is involved in the design, marketing, testing, advertising, promotion, sale, distribution, licensing, and/or manufacturing of products made by One World Technologies, including Ridgid products and Plaintiff's Ridgid table saw.

6. At all relevant times, TTI-NA has transacted and conducted business within the State of Louisiana and has derived significant revenue from interstate commerce. TTI-NA expected or should have expected that its actions would have consequences within the State of Louisiana.

7. Defendant **RIDGID, INC.** ("Ridgid, Inc.") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Ohio.

8. The product manual provided with Plaintiff's table saw states that the Ridgid trademark on Plaintiff's saw was licensed from Ridgid, Inc. Upon information and belief, Ridgid, Inc. was involved with the design, manufacture, marketing, testing, advertising, promotion, sale,

and/or distribution of Ridgid-branded table saws, including the one purchased and used by Plaintiff.

9. At all relevant times, Ridgid, Inc. has transacted and conducted business within the State of Louisiana and has derived significant revenue from interstate commerce. Ridgid, Inc. expected or should have expected that its actions would have consequences within the State of Louisiana.

10. Defendant **THE RIDGE TOOL COMPANY** ("Ridge Tool Company"), is a corporation organized under the laws of the State of Ohio, with its principal place of business in Ohio. Ridge Tool Company manufactures a wide variety of industrial products, including power tools and table saws. These tools are marketed and sold using the Ridgid name.

11. Upon information and belief, Ridge Tool Company exercises dominion and control over Ridgid, Inc., and is involved in the design, marketing, testing, advertising, promotion, sale, distribution, licensing, and/or manufacturing of products made by Ridgid, Inc., including Ridgid products and Plaintiff's Ridgid table saw.

12. At all relevant times, Ridge Tool Company has transacted and conducted business within the State of Louisiana and has derived significant revenue from interstate commerce. Ridge Tool Company expected or should have expected that its actions would have consequences within the State of Louisiana.

13. Defendant **HOME DEPOT U.S.A., INC.** ("Home Depot") is a Delaware corporation with its principal place of business located in Georgia. Home Depot maintains and operates retails stores selling building products and materials in several states, including Louisiana.

14. Home Depot has used the Ridgid trademark to market a line of power tools, including the Ridgid table saw Plaintiff purchased. Accordingly, Home Depot is involved in the design, manufacture, marketing, testing, advertising, promotion, sale, and/or distribution of Ridgid-branded tools, including Plaintiff's Ridgid table saw.

15. At all relevant times, Home Depot has transacted and conducted business within the State of Louisiana and has derived significant revenue from interstate commerce. Home Depot expected or should have expected that its actions would have consequences within the State of Louisiana.

## JURISDICTION

16. Damages in this case exceed $75,000.00, and complete diversity exists between the parties. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Further, this Court has personal jurisdiction over the Defendants because Defendants have regularly and purposefully transacted business and engaged in commercial activities within the State of Louisiana.

## VENUE

17. Venue is proper for this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana, and the Defendants regularly transact business in this District.

## FACTUAL BACKGROUND

18. On or about November 15, 2020, Evans purchased a Ridgid-branded 10-inch table saw Model No. R4520, Serial No. EM20235D0106600 (the "Ridgid Saw") from Home Depot.

19. The Ridgid trademark is owned by Ridgid, Inc., and licensed to Home Depot, and used by Home Depot and Ridgid, Inc. to market and sell a line of power tools, including the plaintiff's table saw.

20. While the product manual provided with Plaintiff's table saw states that One World Technologies manufactured his table saw, upon information and belief, Ridgid, Inc., Ridge Tool Company, and/or Techtronic were also involved with the design, manufacture, assembly, testing, and certification of Plaintiff's table saw.

21. Plaintiff, a hobbyist woodworker, reviewed all instructions and warnings, including those provided in the Ridgid table saw's product manual before first using the table saw. Plaintiff continued to review these instructions and warnings, including those provided in the product manual, over time as he performed different cuts with the table saw. When instructed, Plaintiff also used accessories, such as a push stick, that were provided by Defendants with the table saw.

22. In order to increase his safety of operation of the table saw, plaintiff constructed two after-market accessories. First, plaintiff constructed a cross-cut sled ("sled"), which is a square device seated on top of the saw face, allowing for more consistent square and repeatable cuts. Second, plaintiff constructed a push block using a "fish" design commonly utilized by woodshop professionals, which is a more durable and stronger push block than the plastic device sold with the Ridgid table saw. These two accessories were utilized at all times by plaintiff to increase the safety of operation of the Ridgid table saw.

23. Plaintiff used the table saw without incident for about three months. However, this changed on March 15, 2021, when Mr. Evans used this table saw in an attempt to make a rip cut on a long and narrow piece of wood.

24. A rip cut is a cut that is made along the length of a workpiece as opposed to across the workpiece. The wood Plaintiff was cutting was approximately one inch wide and was a long and narrow strip.

25. Plaintiff read over and followed all of the applicable warnings and instructions, including those provided in the Ridgid table saw's manual, for making this cut.

26  At all times relevant hereto the plaintiff was using the table saw in question in a reasonable, foreseeable, and intended manner. The injury suffered by the Plaintiff was the exact type of injury that can be caused by a defective table saw.

26. Plaintiff also used his "push block" when performing this cut to push the workpiece through the table saw's blade. The push block device was placed at the end, behind the workpiece, and allow the plaintiff to push the workpiece forward into the blade.

27. Defendants included a flimsy plastic push stick as an accessory with the Ridgid table saw Plaintiff purchased. Plaintiff used his upgraded "fish" push block when performing the cut discussed herein.

28. Because the workpiece Plaintiff cut was narrow, he used his left hand to guide the push block and to prevent the workpiece from moving into a position it was not supposed to be. Mr. Evans' right hand pushed the workpiece using the push block, which was stationed just behind the workpiece.

29. Plaintiff, a hobbyist woodworker, knew that workpieces can "kickback" in certain situations. A kickback occurs when a table saw's blade binds or stalls on a workpiece. This causes the workpiece to be thrown back at the table saw operator, potentially causing serious injuries and even death.

31. As Plaintiff performed the cut on March 15, 2021, the workpiece became caught on the edges of the blade. This caused the push block Plaintiff was using to abruptly stop. When the workpiece Plaintiff was cutting caught on the edges of the blade, Plaintiff feared that a kickback was about to occur. Plaintiff accordingly attempted to move his body out of the path the workpiece would likely travel if it was kicked back. However, as he was doing so, fingers on his left hand came in contact with the table saw's blade, causing significant injuries.

## THE RIDGID TABLE SAW WAS DEFECTIVELY DESIGNED

32. The Ridgid table saw Plaintiff purchased and used was in a defective condition at the time it was designed, manufactured, sold, and/or marketed by the Defendants and at the time it left Defendant's possession in at least the following ways.

33. First, the table saw failed to incorporate flesh-detecting technology, such as the technology utilized by SawStop, LLC ("SawStop"), into the design of the table saw. For many years' technology has been available that would have eliminated or reduced Plaintiff's injury. Such technology, known as SawStop, stops the spinning saw blade almost instantly upon contact with human skin.

34. It is eminently foreseeable that human skin will come in contact with the spinning table saw blade, as evidenced by the fact that approximately 30,000 table saw injuries occur annually. It is also eminently foreseeable that blade contact injuries are drastic and life changing. The devastation of these injuries is easy to imagine considering a standard 10 inch, 40-tooth saw blade rotates at 4,000 rotations-per-minute, meaning that a blade can make a cut every 370 microseconds. According to the Consumer Product Safety Commission, there are approximately 4000 to 5000 hand and/or finger amputations every year which translates into an amputation

injury from a table saw, roughly 13 times a day, every day of the year, year after year. Medical costs for the treatment of table saw injuries are estimated at more than $2 billion every year.

35. In 1999, Dr. Steve Gass, an amateur woodworker and full-time patent attorney with a Ph.D. in Physics, conceived of a method to stop a saw's spinning blade quickly enough to avoid serious injury. Applying his technical skills, he developed a prototype saw and began testing it with hot dogs. Subsequently, he conducted a test on his own finger, and, to his delight and relief, the blade stopped instantly, and he needed only a band-aid to deal with a small nick.

36. Dr. Gass's skin-sensing/blade stop system operates by applying a small amount of electrical voltage to the blade of a saw. If the saw detects a change in current from contact with a user's hand, an automatic braking system is activated, jamming an aluminum lock into the blade – stopping it in less than five milliseconds. The result is a small cut, not a severe laceration or amputation. This safety system is now referred to as Active Injury Mitigation ("AIM") technology.

37. Encouraged by the success of his safety mechanism, Dr. Gass joined with two colleagues to exhibit and market the technology. Although he won glowing reviews and awards from observers, his quest to license his AIM technology to members of the table saw industry did not succeed despite years of trying.

38. In or around November 2000, Defendants were made aware of flesh-sensing technology that stops a spinning table saw blade almost instantly upon contact with human skin. Subsequently, Stephen Gass, the inventor of the SawStop technology, offered to make the technology available to Defendants and other manufacturers through a licensing agreement. The SawStop technology was feasible for incorporation into the Ridgid Saw.

39. In fact, employees of Ridgid, Inc., a subsidiary of One World until it merged into One World in 2004, specifically met with SawStop representatives in 2000 and/or 2001 to review this technology.

40. SawStop later presented Defendants Techtronic, One World, Ridgid, Inc., The Ridge Tool Company and/or entities affiliated with these Defendants, with a licensing agreement to allow Defendants to use SawStop's technology.

41. Defendants, acting through the Power Tool Institute, refused to license the SawStop technology and instead participated in a group boycott of SawStop. They also lobbied the Consumer Product Safety Commission to prevent the adoption of flesh detection technology as a safety standard for table saws.

42. Defendants and other table saw manufacturers failed to pursue a license of the available SawStop technology or to incorporate similar technology into their table saws. As a result, the Ridgid Saw has no flesh-detecting technology or other similar technology that would stop a spinning saw blade upon contact with human skin. Because it lacks such technology, the Ridgid Saw was unreasonably dangerous as designed and manufactured.

43. As the exclusive retailer of the Ridgid Saw, Home Depot had actual knowledge of the aforementioned defects in the Ridgid Saw and of its unreasonably dangerous condition, despite such knowledge, Home Depot sold the Ridgid Saw as-is, without incorporating the safer alternative designs that were readily available.

44. Despite being aware of this technology, and in some cases after being presented with a licensing agreement, the Defendants failed to incorporate flesh-detection technology into their table saws.

45. SawStop has alleged in a recent lawsuit that Defendants' decision not to incorporate flesh-detection technology was motivated by an industry-wide boycott of its products. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 418 (4th Cir. 2015), cert. denied, 136 S. Ct. 2485 (holding that SawStop's complaint allegations "suggest a plausible agreement to engage in a group boycott" of its products).

46. SawStop alleged that this boycott was launched, at least in part, because of Defendants' potential product liability exposure. *Id.* at 419.

47. Plaintiff purchased the Ridgid table saw in or about November, 2020.

48. As SawStop has alleged in court filings, and upon reasonable information and belief, flesh detecting technology could have been implemented on "all table saws" by 2008. *Id.*

49. This technology could have therefore been integrated into the Ridgid table saw's design prior to its manufacture and sale to Plaintiff.

50. Integration of flesh-detecting technology, such as SawStop's technology, would have prevented or greatly reduced Plaintiff's injury.

51. For example, SawStop's technology, once activated, can stop a spinning table saw blade in less than five milliseconds. Furthermore, the momentum caused by the sudden braking of the table saw's blade carries it beneath the table saw's surface, preventing further harm to the operator.

52. Accordingly, the product was unreasonably dangerous because it failed to utilize this flesh-detecting technology.

53. Second, Defendants' table saw marketed and sold to Plaintiff was also defective, because in addition to failing to incorporate the readily available SawStop technology, Defendants failed to provide any other type of feature on the table saw blade which, like

SawStop's flesh-detecting technology, would stop the table saw's blade once it made contact with the operator.

54. Defendants were aware of such technology well before Plaintiff's table saw was manufactured. However, despite being aware of such technology, Defendant failed to incorporate this technology into the design of Plaintiff's table saw.

55. Third, Defendants' table saw marketed and sold to Plaintiff was defectively designed because the riving knife and anti-kickback pawls assembly fail to reduce or prevent the risk that objects, including workpieces or push blocks, could kickback.

56. Defendants were aware that any design feature that creates uneven edges around a table saw's blade can result in "serious personal injury."

### DEFENDANTS FAILED TO PROVIDE ADEQUATE INSTRUCTIONS OR WARNINGS TO PLAINTIFF AND OTHER CONSUMERS

57. As stated above, Plaintiff reviewed the table saw's product manual before performing the cut which caused his injuries, and he followed the instructions detailed in this manual while making the cut. However, Defendants failed to provide adequate instructions or warnings in their product manual or elsewhere which would have prevented Plaintiff's injuries.

58. Defendants failed to adequately instruct table saw operators, including Plaintiff, about how to safely rip cut narrow pieces of wood while using the table saw. Defendants further failed to warn table saw operators, including Plaintiff, about the dangers created by rip cutting a narrow piece of wood.

59. Defendants also failed to instruct or warn Plaintiff that push blocks or other objects could get caught in the saw blade, potentially causing serious injuries.

**PLAINTIFF'S USE OF THE RIDGID TABLE SAW AND HIS RESULTING INJURIES**

60. Plaintiff purchased the Ridgid table saw expecting that it would be safe for its ordinary use.

61. Prior to Plaintiff's purchase and use of the Ridgid table saw, Defendants knew or should have known that SawStop, or other similar technology, could have been implemented on the Ridgid table saw to stop the table saw's blade once it made contact with the operator.

62. Therefore, at the time Plaintiff purchased and used the Ridgid table saw, Defendants knew or should have known that the table saw created a risk to consumers of serious personal injury, including finger amputations, severe lacerations, and even death.

63. Despite the fact that Defendants knew or should have known of the serious risks associated with the Ridgid table saw, Defendants failed to adequately warn Plaintiff of said serious risks before he used the table saw, as detailed above.

64. Had Plaintiff known of the risks and dangers associated with the Ridgid table saw, he would not have used the table saw, or he would have taken different safety measures, and would not have suffered injuries. Further, had Plaintiff known the Ridgid table saw did not have flesh-detection technology, he would not have purchased the saw, and instead would have opted for a SawStop-enabled saw.

65. As a direct and proximate cause of his use of the Ridgid table saw, Plaintiff has suffered an amputation of a portion of his left middle finger, ring finger, and fifth finger, significant harm, pain and suffering, physical injury, and bodily impairment that caused permanent effects, and which will continue to cause him physical effects and damage that will affect him throughout his lifetime.

66.     Further, as a direct and proximate cause of his use of the Ridgid table saw, Plaintiff has suffered significant mental anguish, loss of enjoyment of life, and emotional distress, and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

67.     Plaintiff has also incurred medical expenses and other economic harm and may continue to incur such expenses in the future as a direct and proximate result of his use of the Ridgid table saw.

## COUNT I:
## LOUISIANA PRODUCTS LIABILITY ACT ("LPLA")
## DESIGN DEFECT UNDER LA. R.S. § 9:2800.56

68.     Plaintiff repeats and incorporates by reference paragraphs 1 – 67 of this Complaint as if fully set forth herein.

69.     At all times material to this action, Defendants was responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the Ridgid table saw purchased and used by plaintiff.

70      The Ridgid table saw is defective and unreasonably dangerous to consumers.

71.     The Ridgid table saw is defective in its design or formulation in that it is not reasonable fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

72.     At all times mentioned herein, the Ridgid table saw was not safe or suitable for the purposes for which Defendant, directly and indirectly, advertised, marketed, promoted, designed, manufactured, distributed, and sold the table saw to Plaintiff and placed the table saw into the stream of commerce. The Ridgid Saw reached Plaintiff without any substantial change in

their condition and the Ridgid Saw was in the possession of the Defendants at the time the defect occurred.

73. The Ridgid table saw, sold to and used by the Plaintiff, was defective and unreasonably dangerous when it left control of the Defendant in one or more of the following ways:

    a) The table saw failed to incorporate SawStop, or other flesh-detection technology;
    b) The table saw's riving knife and anti-kickback pawls assembly fail to reduce or prevent the risk that objects, including workpieces or push blocks, could kickback.
    c) Defendants' product was defectively designed and unreasonably dangerous in design and composition in that other table saw have incorporated SawStop or similar technology could achieve similar results without the risks presented by the table saw.

74. In addition, at the time the Ridgid table saw used by Plaintiff left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Mr. Evans' injuries without impairing the reasonably anticipated or intend function of the product. These safer alternatives designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Mr. Evans' injuries without substantially impairing the product's utility.

75. The Ridgid Saw failed to perform as safely as an ordinary consumer, such as Plaintiff, would expect when used in an intended or reasonably foreseeable manner. The benefits of the design of the Ridgid Saw do not outweigh the risk of danger inherent in such design. Moreover, the Defendants could have provided a safer alternative design into the Ridgid Saw that included, among other things, a better blade guard system and flesh detection technology. Such a safer alternative design existed at the time the Ridgid table saw was manufactured, and it would not have substantially impaired the Ridgid Saw's utility. Such safer alternative design was

economically and technologically feasible at the time the product left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

76. As a direct and proximate result of the Ridgid table saw defective design, Mr. Evans, has and will continue to suffer severe and permanent injuries and/or damages. The injury suffered by Plaintiff was the exact type of injury that can be caused by a defective table saw.

77. As the exclusive retailer of the Ridgid table saw, Home Depot had actual knowledge of the aforementioned defects in the Ridgid table saw and of its unreasonably dangerous condition. Despite such knowledge, Home Depot sold the Ridgid table saw as-is, without incorporating the safer alternative designs that were readily available.

## COUNT II:
## LOUISIANA PRODUCTS LIABILITY ACT
## INADEQUATE WARNING UNDER LA. R.S. § 9:2800.57

78. Plaintiff repeats and incorporates by reference paragraphs 1 – 77 of this Complaint as if fully set forth herein.

79. Defendants knew, or in light of reasonably available knowledge, should have known that the Ridgid table saw was dangerous and caused injuries including the amputation of fingers. The ordinary user or consumer of Ridgid table saw would not have realized such dangers.

80. Defendants neglected to provide Mr. Evans with any warning which could have been expected to catch the attention of a reasonably prudent person under similar circumstances who may have purchased the Ridgid table saw. Furthermore, Defendant failed to provide warnings to Plaintiff which could accurately advise him or an ordinary consumer of the scope, severity and likelihood of serious injury resulting from the use of Ridgid table saw. Had such warnings been provided, Mr. Evans would have avoided the risk of amputation of his fingers by

either not purchasing the Ridgid table saw or by purchasing a different device with SawStop technology. As such, the severe and permanent injuries and/or damages sustained by Mr. Evans could have been avoided.

81. Defendant neglected to provide Mr. Evans with adequate warnings to accurately advise him of the increased propensity for amputation of fingers resulting from the use of the Ridgid table saw without SawStop technology.

82. As a direct and proximate result of the Ridgid table saw's defective and inappropriate warnings, Mr. Evans, suffered and will continue to suffer severe and permanent injuries and/or damages.

## COUNT III:
## LOUSIANA PRODCUTS LIABILITY ACT
## BREACH OF EXPRESS WARRANTY UNDER LA. R.S. § 9:2800.58

83. Plaintiff repeats and incorporates by reference paragraphs 1 – 82 of this Complaint as if fully set forth herein.

84 At all times material herein, Defendants directly and indirectly manufactured, packaged, distributed, advertised, marketed, promoted, recommended, supplied, and sold the Ridgid table saw for use in woodworking and placed the saw in the stream of commerce. In doing so, Defendants expressly warranted to all foreseeable users of the Ridgid table saw, including Mr. Evans, that the Ridgid table saw was safe and effective for its intended purpose.

85. Plaintiff reasonably relied upon Defendants' skill, superior knowledge, and judgment upon the aforesaid express warranty provided by Defendants.

86. Upon purchasing the Ridgid table saw, Mr. Evans' use of the table saw was consistent with its intended purpose for which Defendants directly and indirectly advertised, marketed, and promoted the table saw. Additionally, Plaintiff's use of the Ridgid table saw was

reasonably contemplated, intended, and foreseen by Defendants at the time of the distribution and sale of the Ridgid table saw by Defendants. Therefore, Mr. Evans' use of the Ridgid table saw is within the scope of the express warranties issued by the Defendant.

87. Defendants breached the express warranties because the Ridgid table saw was not safe nor fit for its intended uses and purposes.

88. As a direct and proximate result of Defendants' breach of expressed warranty, Mr. Evans suffered, and will continue to suffer, severe and permanent injuries and/or damages.

## DAMAGES

89 As a result of the failures described herein, Mr. Evans has sustained substantial injuries, permanent disability, and damages, including, but not limited to, laceration and amputation of portions of three fingers on his left hand, resulting in severe and permanent bodily injury.

90. As a result of his injuries, Plaintiff has and will sustain the following nonexclusive damages including physical injuries, past, present and future emotional distress; loss of enjoyment of life; past, present and future mental pain and suffering; inconvenience; past, present and future physical pain, suffering and disability; past, present and future medical expenses; economic damages; lost wages; loss of earning capacity; and other damages to be proven at the trial of this matter.

## JURY DEMAND

91. Plaintiff hereby demands a jury trial on all issues so triable.

**WHEREFORE**, Complainant, Ronald Evans, prays for a trial by jury and after due proceedings are had, that there be judgment herein in his favor and against defendants ONE WORLD TECHNOLOGIES, INC., TECHTRONIC INDUSTRIES NORTH AMERICA, INC.,

RIDGID, INC., THE RIDGE TOOL COMPANY, and HOME DEPOT U.S.A., INC. for all sums reasonable under the premises, compensatory damages, medical expenses, lost wages, pain and suffering, emotional distress, permanent injury and disability, all economic damages, costs of these proceedings, interest thereon from the date of judicial demand until paid, and all such other relief the plaintiff is entitled in equity or law.

**Respectfully submitted:**

**BRUNO & BRUNO, L.L.P.**


*/s/ Joseph M. Bruno*
Joseph M. Bruno (La. Bar # 3604)
Daniel A. Meyer (La. Bar # 33278)
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 562-6775
Email: dmeyer@brunobrunolaw.com
*Attorneys for Ronald Evans*